Our fourth case for this morning is Tawuo v. Eric Holder, Attorney General. Mr. Kreiselman, I saw General Holder last week and he said he was once introduced as the 64th Attorney General. He said, no, I'm, he corrected the person at the time, he said, I'm the 62nd. And he said, now I feel like the 62nd, the 63rd, the 64th. I was wondering if we would have to change the caption of this case by the time we're done. We'd be happy to do it if that becomes necessary. We're accustomed to that. So you may proceed. May it please the court, my name is Matthew Kreiselman and I represent the petitioner Arnaud Tawuo. Mr. Tawuo was placed in removal proceedings after filing an affirmative asylum application with the Department of Homeland Security. At the time, the Department of Homeland Security denied his asylum application and referred it to the Immigration Court due to material inconsistencies in his claim based on not having enough detail in his initial application. So I'll tell you what worries me the most, and particularly in light of the standard of review that we have, which is very deferential to the, to the board. And of course, in this instance, the immigration judge is largely adopted by the board. That's number one, the plagiarism count, and number two, his representation that he had only one interview for a visa when in fact he had two. And the immigration judge thought these were both serious problems with his credibility and relied on them in making his credibility determination. How can we say that no one could come to that conclusion? Your Honor, in terms of the Wiccan News article line that was in his affidavit, it's unclear. The petitioner did state that he did, he had written some articles and that's, it might have come from those articles. But he never proffers them. He never files a motion to reopen. He never in any way tries to back up that statement. And so the immigration judge isn't impressed by it. I mean, it's, he frankly just doesn't believe that explanation. And that's what motions to reopen are for. I mean, if Mr. Tawuo had written something and he could point to it, I would think that would be perfect material for a motion to reopen. But it never happens. That is true, Your Honor. We would, our position would be in that, you know, in that aspect in respect to that line that was in the affidavit out of a 10-page affidavit. It didn't go to, and I know that after the Real ID Act, we don't need to look. If there is an inconsistency that does go to the heart, that doesn't go to the heart of the claim, the judge may still consider it in the totality of the circumstances. Well, and on top of that, you know, I've been thinking way back with my academic hat on, if you spot some plagiarism, you're not really sure about the integrity of the rest of the document either. I mean, how do you know it's just one sentence? Maybe the person changed the wording a little bit more elsewhere. It's really, it's the kind of behavior that causes serious concern about credibility. I understand that, Your Honor. And I do go back to my statement that it is, he doesn't state in his affidavit that he saw this happen. He states that this happened at an event he was attending. He doesn't say he saw it. He doesn't say that he knew the people. He doesn't describe anything in terms of the event, rather than saying this happened at that rally where there were many people. So what about the visa application? In terms of the visa application, in our briefs, we talk about this in terms of the fact that he had no reason to misrepresent his visa application. But he had every reason to. I mean, if he failed once, then the natural question would be, why did you fail? Did you not satisfy some regulatory requirement that the embassy enforces for giving visas out? And the government does submit the two visa applications in terms of they submit what the State Department wrote as to why they denied it, the first one, and why they approved the second one. In terms of the first one, and both were based on the same school that he was supposed to attend in the United States. They were both student visas. It was the same school, the same circumstances. It looks like in the first one it was denied because we only have a brief statement in the denial for why it was denied in terms of it seems like it doesn't make sense. But don't you think if you were an immigration judge, and you've caught somebody twice in a misrepresentation, I'll just call it, a failure maybe to be as complete as possible, however you want to say, this immigration judge found that that undermined his confidence in this man's credibility. And that's why I stressed at the beginning the standard of review. How are we in a position to contradict that? Because both of these don't go to, and like I said, it's still back to the REAL ID Act in terms of the judge considers the totality of the circumstances that go to the heart of the claim. But in Kadia v. Gonzalez, which was a pre-REAL ID Act case, but I believe that they speak about the REAL ID Act, it was after the REAL ID Act passed, but they mention it, the judge is supposed to still determine between materialized and trivial inconsistencies. In terms of both of these aspects of the respondent's testimony, they're just side issues in his case. It doesn't go to what happened to him. It doesn't talk about, and as I said with the visa application, I don't believe that he would have had any reason to misrepresent his visa application. Mr. Krezelman, you cite Section 1158 of the REAL ID Act, which sets out the criteria that the immigration judge is to consider in making determinations of credibility. When you look at the credibility findings that the immigration judge made, and which was affirmed, I'm looking at page 92 of the record, the immigration judge made very, very specific, very cogent, and very compelling findings. The argument that the first affidavit contained materials that were, that his testimony contained things that weren't in the first affidavit has been explained by the petitioner, in that he thought the first affidavit was supposed to be just a summary. It wasn't supposed to be a detailed examination of all the factors that would permit him to remain in the United States. The immigration law judge specifically addresses that. He talks about the specifics in the affidavit that were both contemporaneous with the omitted parts that appeared in his testimony, as well as the substantive similarities between the statements in the affidavit and the statements made later in his testimony. He prefaces that by pointing out that this is a highly intelligent person, that was obviously very prepared, had mentioned that he had done some reading in preparation for his application. These findings, in my judgment, are remarkably specific and comply to the nines with the requirements of Section 1158 of the Act. In terms of the... I mean, going further to when we're going to start disturbing findings of credibility. In terms of the differences between the first affidavit and the second affidavit, I know that the judge does speak as to... The immigration judge does speak as to that the first affidavit did have events that were listed in the second affidavit, and some of them were actually very specific, and he doesn't speak as to some of the events which were written in the second affidavit that did happen at the same time. However, this is a man, he is a very intelligent man, but if I went to an engineering student in the United States, he would have no idea how to write a brief. He would have no idea that he has to be very specific, and I actually speak in my reply brief as to the asylum application instructions state that... They do state to write your full story in your affidavit. However, they talk about the fact that you can supplement your explanations in anything you submit in your asylum application at the time of the interview. We don't have any... The interview notes from the asylum application are... We don't get those. I submit to you, though, that the Illinois... specifically addressed that. He noted the degree of specificity in the first affidavit, which sort of belies the explanation that at that point he was uninformed because he didn't have the assistance of this other fellow. I forget what his title is. But the immigration judge specifically rejects that and says there's a great deal of specificity and that the averments in the first affidavit are contemporaneous with events that were raised in the second affidavit, and substantially similar, implying that if he's smart enough to put them in the first affidavit, these kinds of things, he should have incorporated the second ones, and further implying that something occurred between the first and second affidavits that goes to credibility. I do believe that he included... There was nothing in the second affidavit that wasn't in the first affidavit. Just from someone writing an affidavit, I believe sometimes that they would have a lot of emotion writing it, and if they get into a certain event, they write a lot, and they would stop depending on certain events. I just, from experience, dealing with someone who's not a lawyer writing an affidavit, they're not going to write it like a lawyer would write it. They wouldn't know, and the immigration judge does speak as to the fact that the first affidavit doesn't seem to make sense. The events don't run together in terms of with the second affidavit where the petitioner did have the help of an attorney. It does seem to make more sense in terms of the timeline of events. Here's what he says. He says he acknowledged referring the petitioner. He acknowledged that he was aware he could be placed in removal proceedings if his initial request was not granted. He further acknowledged that he knew it was important for the asylum officer to have full facts in the case. This supports the conclusion that he would include all material aspects of the claim at the first opportunity, and then he goes on to talk about how well-educated he was and how similar in quality the verments in the second affidavit were to those in the first. I think this is almost an exemplar of how to comply with 1158, it seems to me. I just believe that with the petitioner, and I just know from, you know, and it comes off in terms of when the first, when the asylum office wrote their decision, they stated that he didn't include materials. Testimony seemed incomplete. He didn't, the events were not in detail. Your point was, and let me just try to summarize because time has run out. As I understood your brief, you were arguing that it was more a question of supplementation. The government might say exaggeration in the second affidavit, but it wasn't flat inconsistencies between the first and the second. It was just a lot more. That's correct, Your Honor. Okay. I reserve the rest of my time. Okay. I think you've used it, but I may give you a minute. Mr. O'Connell. Good morning, Your Honors. May it please the Court, Joseph O'Connell on behalf of the Attorney General. Your Honors, the record in this case does not compel the conclusion that Mr. Tawo testified credibly. I would agree with Your Honor that this is an exemplary 27-page immigration judge decision, finding him not credible. The agency relied on four main things. First, the material omissions from his first affidavit, the inconsistencies between his affidavits and his written evidence, the fact that, again, the language contained in his second affidavit is identical to a WikiNews article. I mean, that was pretty trivial. I thought the main point was really that the second affidavit rather systematically both, let's just say, portrayed a more grim picture of the treatment that he had received through his student activism and also portrayed a picture of somebody who was more centrally placed in this. So both in the sense of how bad was it and who was he, the second affidavit appeared to shift the focus, if you will, and the immigration judge looking at all of the things that Judge Jarrett is talking about, what happened in 2006 to 2008 and what's going on. I agree with you, Your Honor. There's two main things with that. The first is the material omissions. So there's wholesale allegations that are missing. And, again, the IJ noted that he was embellishing the alleged abuse that he suffered in Cameroon. In the second affidavit, he actually reduces the time he spent in the hospital, does he not? He does reduce it, but that only increases inconsistencies between his accounts. So, I mean, there are many more wholesale allegations in his second affidavit. And, again, there's no reason why he wouldn't include these in his first affidavit. As Your Honor noted and the IJ noted, he included a litany of details regarding the allegations that he did include in his first affidavit. But he simply failed to include those material omissions with regard to that first affidavit. And Mr. Taylor's main argument in the opening brief is, well, look, he didn't have an attorney when he composed his first affidavit. But that argument is unpersuasive for a few reasons. Number one, as the IJ noted, there are instances where, yes, where certain individuals from very impoverished countries who are illiterate might need an attorney to help them express themselves. But that was specifically not the case here. Mr. Taylor, Your Honor? I understand your point if you're saying that the immigration judge didn't err except by rejecting these explanations. But those are explanations that sometimes are perfectly valid, aren't they? Sometimes. But when you look at the totality of the circumstances here and you look at Mr. Taylor's level of competence, I mean, again, he has a master's degree. Counsel, if you're trying to convince us the immigration judge was absolutely right, you're not going to convince me, but you may convince me that there was no error. I assume you're focused on that difference. Okay. Well, if you look at that, I'm trying to understand the distinction, but I don't see any error in the immigration judge's description. It has to do with our standard of review. Oh, standard of review. Okay. Yeah, of course. I mean, you look at the totality of circumstances and you look at the totality of circumstances of the record, and it has to compel the conclusion that Mr. Taylor was a credible witness. And when you add up the omissions, the inconsistencies, the Wicked News article, and the misrepresentations about the U.S. visa process, I mean, all this is more than enough evidence to support the agency's adverse credibility determination. Again, this is an exemplary adverse credibility determination. Now, can you explain to me? I have to say I was baffled by one aspect of this case, which was the translation of various documents. These documents are all in French, right? Most of them are, yes. And Mr. Taylor did not submit some translations of them. Why is it hard to find a French translator? This is Mr. Taylor's burden for the removal proceedings. I mean, this is the simplest of things that he could have done and he didn't do. So, I mean, again, it's Mr. Taylor's burden to simply find a third-party translator, translate them, and certify that the translator is competent in French and English. And he didn't do that for a number of documents here. So is there a list that he has to go to? Or can he just go hire a French graduate student from the University of Chicago to do it? I'm not entirely certain what the requirements are for the IJA. They have some importance since it would depend how easy it is to find somebody that they would accept. Whatever the requirements are, I think what the rule is, and I think the IJA noted this, I can't be 100% certain on this, but you just have to get a third-party, a neutral third-party who will certify that they are competent in French and English. Well, at best, a disinterested party. At best, a third-party disinterested party. Mr. Taylor can't simply translate them himself. So, again, just going to the omissions, he does not need – again, he has a master's degree in telecommunications engineering. It's not engineering. It's telecommunications engineering. He was competent enough to get through the Polytechnic in Cameroon. And, again, regarding the argument that he needs an attorney, he doesn't need an attorney to tell his own story. You don't need to write out a legalized affidavit. All you have to do is tell your own – just tell your story, tell your narrative. You can do that here. Could I ask – you had told us you'd give us an update on the status of Mr. Tawo's case in light of changes in policy. Mr. Tawo's case has been vetted, and DHS has declined to exercise prosecutorial discretion in this case. So they're pursuing the removal. We're pursuing – yes, we are pursuing their removal proceedings here and pursuing the petition for review. So, yes. But, again, if I could just really quickly address the WikiNews article, I think that's a great illustration of why Mr. Tawo is not credible. You know, he gets caught basically – he says, you know, I wrote this article, and it was all based on my own personal knowledge. And he gets caught just sort of cutting and pasting from some WikiNews article. And when he gets confronted with this – But kind of a side fact. I mean, it wasn't really essential. It was this happened to somebody else was the sentence that – That's correct. But when you look at his explanation, he just doubles down. He persists in this implausibility. Doesn't he say that perhaps the Wiki article was plagiarized from something he had written? At that point, he says, yes, well, I wrote numerous articles on these in Cameroon, and it's possible that the WikiNews article was plagiarizing my articles. And, of course, the IJ says, did you submit any of this? Did you submit any of this evidence? And he says no. And with regard to the motion to reopen, no motion to reopen has been filed. But, again, these are exactly the type of documents that you would file with an asylum application in the first instance. So, again, none of that was included. And with regard to the U.S. visa, he did have a reason to misrepresent because, again, the State Department denied his first visa application because they said in their notes that his trip was not making sense. And so when you take all these things, the omissions and consistencies, the WikiNews article and the visa misrepresentations, and you add them all together, the immigration judge properly found that the totality of the circumstances or the totality of Evans' record established that Mr. Tewo was not telling the truth. And for all these reasons, the court should deny the petition for review. Unless there's any more questions?  Thank you very much. Okay. Thank you. Anything further, Mr. Kretsman? You ran out of time, but I'll give you a minute. I know that Judge had noted a discrepancy in reducing the amount of time he spent in the hospital. The petitioner did state that he had spent about, I believe it was, eight days in the hospital. The medical records he submitted stated that he was supposed to rest for 30 days. I don't know if that's where the discrepancy came from. The petitioner's name or his main language was in French, so most of his, if you note his first affidavit, which he submitted, was in English. The petitioner has learned English since he's come to the United States, but that only began when he first got here. In terms of the translations, the petitioner, I know he did have, he had about three months to prepare his entire case before the immigration judge. Which I would be sympathetic to if it were, you know, a very uncommon language, but really, French? But I, from dealing with the petitioner, I know that, you know, he wasn't able to get many of the materials that he received just in time for the hearing. Some of them were submitted, some of them he personally translated, and the judge did not accept the translations because, understandably, but because he couldn't find a third-party translator at the time. I thank you for your time. All right. Well, thank you very much. Thank you, Your Honors. We will take the case under advisement.